# United States Court of Appeals for the Federal Circuit

MISCELLANEOUS DOCKET NO. 908

IN RE UNITED STATES,

Petitioner.

Brian C. Toth, Attorney, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, of Washington, DC, for petitioner. With him on the petition was John C. Cruden, Acting Assistant Attorney General.

Steven D. Gordon, Holland & Knight LLP, of Washington, DC, for respondent Jicarilla Apache Nation.

Alan R. Taradash, Nordhaus Law Firm, LLP, of Albuquerque, New Mexico, for amici curiae Navajo Nation and Pueblo of Laguna. With him on the brief were Daniel I.S.J. Rey-Bear, of Albuquerque, New Mexico, and Donald H. Grove, of Washington, DC.

On Petition for Writ of Mandamus to the United States Court of Federal Claims

Judge Francis M. Allegra

# United States Court of Appeals for the Federal Circuit

MISCELLANEOUS DOCKET NO. 908

IN RE UNITED STATES,

Petitioner.

On Petition for Writ of Mandamus to the United States Court of Federal Claims in case no. 02-25L, Judge Francis M. Allegra.

ON PETITION FOR WRIT OF MANDAMUS

Before LOURIE, FRIEDMAN, and GAJARSA, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

## O R D E R

The United States petitions for a writ of mandamus to direct the Court of Federal Claims ("trial court") to vacate its orders requiring the United States to produce documents that it asserts are protected by the attorney-client privilege. Jicarilla Apache Nation ("Jicarilla") opposes. We hold that the United States cannot deny an Indian tribe's request to discover communications between the United States and its attorneys based on the attorney-client privilege when those communications concern management of an Indian trust and the United States has not claimed that the government or its attorneys considered a specific competing interest in those communications. Accordingly, we adopt the fiduciary exception in tribal trust cases. Under the fiduciary exception, a fiduciary may not block a beneficiary from discovering

information protected under the attorney-client privilege when the information relates to fiduciary matters, including trust management. Because we find that the trial court correctly applied the fiduciary exception to the United States' privileged communications, we deny the United States' petition for a writ of mandamus.

BACKGROUND

Jicarilla sued the United States in the Court of Federal Claims for a breach of fiduciary duties, alleging that the United States mismanaged the tribe's trust assets and other funds. Jicarilla Apache Nation v. United States, 88 Fed. Cl. 1, 4 (2009). The trial court divided the case into phases. The first phase only concerns the government's management of Jicarilla trust accounts from 1972 to 1992. Id. During this phase, the tribe moved to compel discovery of documents related to the management of the trust funds that the United States asserted were protected by the attorney-client privilege, the work-product doctrine, and the deliberative process privilege. Id. In response, the United States "agreed to produce 71 of the 226 documents listed in its privilege log based, in part, upon withdrawing any deliberative process privilege claims," but maintained its privilege claims over the remaining 155 documents. Id. Per court order, the trial court reviewed the remaining 155 documents in camera. Id.

The trial court held that the United States could not deny Jicarilla's request to discover communications between the United States and its attorneys based on the attorney-client privilege because those communications were subject to the fiduciary exception. Id. at 11–12. The trial court explained that under the fiduciary exception, "fiduciaries may not shield from their beneficiaries communications between them and their attorneys that relate to fiduciary matters, including the administration of trusts." Id. at 10. According to the trial court, the fiduciary exception applied to the "'general trust

relationship between the United States and the Indian people,' which comprises a 'distinctive obligation of trust incumbent upon the Government.'" Id. at 6 (quoting United States v. Mitchell, 463 U.S. 206, 225 (1982)). The trial court opined that "basic trust principles are readily transferable to" the United States' fiduciary relationship with Indian tribes. Id. at 11–12. The trial court noted that Congress had enacted legislation appointing the United States as trustee over "56 million acres of land and billions of dollars in tribal assets" and created an Office of Special Trustee "to ensure that each tribe received as complete a trust fund accounting as soon as possible." Id. at 5 (citing 25 U.S.C. §§ 4041–44 (2006)). Though statutes undoubtedly "delimit somewhat the government's obligations," the trial court explained that the U.S. Supreme Court had evaluated the fiduciary relationship using principles of common law and had judged tribal trust cases with the "'most exacting fiduciary standards.'" Id. at 6 (quoting Seminole Nation v. United States, 316 U.S. 286, 296 (1942)).

With these principles in mind, the trial court applied the fiduciary exception, requiring the United States to produce many of the documents that were not otherwise protected as work product. Id. at 13–19. The trial court organized the documents that Jicarilla requested into five categories, including (1) Department of the Interior ("Interior") personnel requests for advice from the Interior Solicitor's Office ("Solicitor's Office") on administration of tribal trusts, (2) Solicitor's Office advice to Interior and Department of the Treasury ("Treasury") personnel, (3) accounting firm Arthur Andersen LLP documents generated under contracts with Interior, (4) Interior documents concerning litigation with tribes other than Jicarilla, and (5) miscellaneous documents such as cover sheets and other documents not falling into the other categories. Id. at 6. The court applied the fiduciary exception to all the documents in the first category

except for duplicates because the "documents involve matters regarding the administration of tribal trusts, either directly or indirectly implicating the investments that benefit Jicarilla." Id. at 14. With few exceptions, the trial court also applied the fiduciary exception to documents in the second category because the documents contained "legal advice relating to trust administration." Id. at 16. In contrast to the first two categories, the trial court allowed the United States to withhold most of the documents in the third category from production as attorney work product. Id. at 17–18. As to the fourth category, the trial court allowed the United States to withhold most of the documents as work product, but required the government to produce four documents with the exception of two footnotes. Id. at 18. According to the trial court, those documents either did not constitute attorney work product at all or, if privileged, were subject to the fiduciary exception. Id. Finally, the trial court required the United States to produce two documents that fell under the fiduciary exception in the fifth category because the documents concerned trust management and various cover sheets that did not appear to be protected by either the attorney-client privilege or the work-product doctrine. Id. at 19.

The United States now petitions for a writ of mandamus to vacate the trial court's order requiring production of the above documents under the fiduciary exception. We have jurisdiction pursuant to 28 U.S.C. § 1651(a).

DISCUSSION

This court has the authority to issue a writ of mandamus against a lower court under common law as codified in the All Writs Act. "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a)

(2006). Mandamus is available only in extraordinary cases to correct a lower court's usurpation of judicial power or clear abuse of discretion. Cheney v. U.S. Dist. Court, 542 U.S. 367, 380 (2004); see also In re Regents of the Univ. of Cal., 101 F.3d 1386, 1387 (Fed. Cir. 1996). A party seeking a writ of mandamus bears the burden of proving that it has no other means of attaining the relief desired, Mallard v. U.S. Dist. Court, 490 U.S. 296, 309 (1989), and that its "right to issuance of the writ is 'clear and indisputable,'" Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953) (quoting United States ex rel. Bernardin v. Duell, 172 U.S. 576, 582 (1899)). Accordingly, the writ is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" Cheney, 542 U.S. at 380 (quoting Ex parte Fahey, 332 U.S. 258, 259–60 (1947)).

Notwithstanding the extraordinary nature of mandamus, this court has issued the writ in appropriate cases "to prevent the wrongful exposure of privileged communications." Regents, 101 F.3d at 1387; see also Mohawk Indus., Inc. v. Carpenter, 78 U.S.L.W. 4019, 4022 (U.S. Dec. 8, 2009) (noting that an appellate court may grant a writ of mandamus to correct a "particularly injurious or novel privilege ruling"). "Specifically, 'mandamus review may be granted of discovery orders that turn on claims of privilege when (1) there is raised an important issue of first impression, (2) the privilege would be lost if review were denied until final judgment, and (3) immediate resolution would avoid the development of doctrine that would undermine the privilege.'" In re Seagate Tech., LLC, 497 F.3d 1360, 1367 (Fed. Cir. 2007) (en banc) (quoting Regents, 101 F.3d at 1388). Accordingly, mandamus may be appropriate to correct a lower court that ordered a party to produce documents in violation of the attorney-client privilege. See id. at 1375–76 (granting mandamus to correct a district court that held a party had waived the attorney-client privilege protecting trial counsel's client

communications and work product by asserting the advice-of-counsel defense in patent infringement suit); Regents, 101 F.3d at 1390–91 (granting mandamus to correct a district court that misconstrued the community of interest doctrine by ordering patent licensee's in-house counsel to testify about advice given to patentee during prosecution when licensee and patentee entered into an exclusive option contract and in-house counsel assumed responsibility for patent prosecution).

As a matter of first impression, the United States petitions for a writ of mandamus, asserting, inter alia, that the fiduciary exception does not apply to it because its relationship to the tribe is different than a traditional fiduciary relationship. The United States explains that the fiduciary exception is based on two primary rationales, including (1) the fiduciary's duty of loyalty to the beneficiaries and (2) the fiduciary's duty to provide information to beneficiaries. Based on these rationales, the United States argues the following: First, it argues that the fiduciary exception's rationales should not apply to its duties to tribes because the United States has competing interests to consider when administering the trust. Second, the United States argues that the attorney-client privilege should protect the documents here because the payment for the legal services did not come from the trust corpus. Third, the United States argues that applying the exception to the attorney-client privilege would improperly impair its ability to seek confidential legal advice. Finally, the United States argues that it does not have a fiduciary duty to disclose information to beneficiaries.

The United States' petition for mandamus thus asks us to interpret the bounds of the attorney-client privilege. This court interprets privileges on a case-by-case basis according to "principles of the common law" when federal law is at issue. Fed. R. Evid.

501; see also Upjohn Co. v. United States, 449 U.S. 383, 396–97 (1981).  Accordingly, we will begin with a summary of the attorney-client privilege and the fiduciary exception before examining how the privilege should apply in this case.

I.  The Attorney-Client Privilege and the Development of the Fiduciary Exception

The attorney-client privilege is the client's right to refuse to disclose confidential "communications between attorney and client made for the purpose of obtaining legal advice."  Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997); see also Fisher v. United States, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged."); Black's Law Dictionary 1235 (8th ed. 2004).  The privilege "encourag[es] full and frank communication between attorneys and their clients" and "recognizes that sound legal advice . . . depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  But the privilege "belongs to the client, who alone may waive it."  In re Seagate Tech., LLC, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (en banc).   An attorney may not assert the privilege against the client's wishes or against the client himself.  See Am. Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 745 (Fed. Cir. 1987) ("The privilege is that of the client, not that of the attorney.").

While "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," Upjohn, 449 U.S. at 389, it is not "an ironclad veil of secrecy," Garner v. Wolfinbarger, 430 F.2d 1093, 1101 (5th Cir. 1970). The Supreme Court has recognized exceptions to the privilege, for example, holding that it does not protect communications made in the furtherance of a crime or fraud. See United States v. Zolin, 491 U.S. 554, 562–63 (1989) ("[T]he purpose of the crime-

Misc. 908                               7

fraud exception to the attorney-client privilege [is] to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." (internal quotation marks omitted)); see also In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 807 (Fed. Cir. 2000) (discussing the crime-fraud exception).  Moreover, we have recognized the joint client or community of interest doctrine: "When the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for purposes of privilege."  In re Regents of the Univ. of Cal., 101 F.3d 1386, 1389 (Fed. Cir. 1996).  Under this doctrine, "communications between a client and the attorney may be privileged as to outsiders, [but] they are not privileged" between clients in a community of interest relationship.  Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007).  Several courts have recognized another limitation on the attorney-client privilege, known as the fiduciary exception.

As early as 1855, English courts required a trustee to produce legal advice to a beneficiary when the beneficiary sued the trustee for mismanagement and the advice related to trust administration.  Devaynes v. Robinson, 20 Beav. 42, 43, 52 Eng. Rep. 518, 518 (1855) ("[C]ases and opinions taken by the . . . trustees must be produced" to the beneficiaries as long as the trustee did not obtain them in contemplation of litigation); Recent Cases, In re Whitworth, 1 Ch. 320 (1919), 33 Harv. L. Rev. 120 (1919).  However, the attorney-client privilege still applied to advice that the trustee sought in anticipation of litigation.  Id.  After Devaynes, English courts have followed the so-called exception to the attorney-client privilege in beneficiary suits against a trustee for trust mismanagement.  See, e.g., Talbot v. Marshfield, 2 Dr. & Sm. 549, 551 62 Eng. Rep. 728, 729 (1865) ("[I]f a trustee properly takes the opinion of counsel to guide him

in the execution of the trust, he has a right to be paid the expense of so doing out of the trust estate; and that alone would give any [beneficiary] a right to see the case and opinion."); Wynne v. Humbertson, 27 Beav. 421, 423, 54 Eng. Rep. 165, 166 (1858) ("[T]he rule is that, where the relation of trustee and [beneficiary] is established, all cases submitted and opinions taken by the trustee to guide himself in the administration of his trust, and not for the purpose of his own defense in any litigation . . . , must be produced to the [beneficiary]."); In re Mason, 22 Ch. D. 609, 609 (1883) (holding that the trustees must produce documents containing "communications by and to the trustees and their solicitors in relation to the trust estate, made before the action was brought"). These English courts reasoned that a beneficiary was entitled to access the advice of counsel because the trustee sought the advice on how to execute the trust for the beneficiary's benefit and because the trust fund paid for the advice. See Wynne, 27 Beav. at 423–24, 54 Eng. Rep. at 166; Talbot, 2 Dr. & Sm. at 550–51, 62 Eng. Rep. at 729.

Though much later, courts in the United States also adopted the fiduciary exception. In 1970, the Fifth Circuit held that shareholders could pierce a corporation's attorney-client privilege to discover legal advice given to corporate management in a suit for breach of fiduciary duty upon a showing of good cause. Garner, 430 F.2d at 1103–04. The Fifth Circuit identified nine factors courts should consider in finding good

cause. Id. at 1104.[1] In reaching its conclusion, the court recognized that a corporation or its managers may sometimes have conflicting interests with shareholders and that shareholders may have conflicting interests among themselves. Id. at 1101 & n.17. "But when all is said and done management is not managing for itself," rather it "has duties which run to the benefit ultimately of the stockholders." Id. at 1101. Analogizing to the crime-fraud exception and the community of interest doctrine, the Fifth Circuit reasoned that the attorney-client privilege had limits when the person seeking legal advice had a superseding obligation to shareholders or some other client was entitled to the advice. Id. at 1103.

Since Garner, U.S. courts have applied the fiduciary exception in contexts other than derivative shareholder actions. For example, courts have applied the exception in trust cases when trustees assert the attorney-client privilege against beneficiaries, as in the leading American case Riggs Nat'l Bank of Wash., D.C. v. Zimmer, 355 A.2d 709 (Del. Ch. 1976). Courts have also relied on the exception in other fiduciary relationships, such as when employers managing plans regulated under the Employee Retirement Income Security Act (ERISA) have asserted privilege against plan

---

[1] The nine Garner factors are as follows:
[1] [T]he number of shareholders and the percentage of stock they represent; [2] the bona fides of the shareholders; [3] the nature of the shareholders' claim and whether it is obviously colorable; [4] the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; [5] whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; [6] whether the communication related to past or to prospective actions; [7] whether the communication is of advice concerning the litigation itself; [8] the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; [9] the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.
Garner, 430 F.2d at 1104.

beneficiaries and when unions have asserted privilege against union members. See Becher v. Long Island Lighting Co. (In re Long Island Lighting Co.), 129 F.3d 268, 271–72 (2d Cir. 1997) (employer acting as an ERISA fiduciary asserting privilege against plan beneficiaries); Aguinaga v. John Morrell & Co., 112 F.R.D. 671, 679–81 (D. Kan. 1986) (union asserting privilege against union members).

The fiduciary exception to the attorney-client privilege is now well established among our sister circuits. At least five circuits recognize some form of the exception, including the Second, Fifth, Sixth, Ninth, and D.C. Circuits. See, e.g., United States v. Mett, 178 F.3d 1058, 1062 (9th Cir. 1999); In re Lindsey, 158 F.3d 1263, 1276–79 (D.C. Cir. 1998); Becher, 129 F.3d at 272 (recognizing the fiduciary exception in the Second Circuit); Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992); Fausek v. White, 965 F.2d 126, 132–33 (6th Cir. 1992); cf. Sandberg v. Va. Bankshares, Inc., 979 F.2d 332, 352 (4th Cir. 1992), vacated, No. 91-1873(L), 1993 WL 524680 (4th Cir. Apr. 7, 1993). Though we are aware of some state courts that have expressly rejected the fiduciary exception, no federal court of appeals has rejected the principle, but have only declined to apply the exception in cases where the facts did not justify its application. Compare Wells Fargo Bank, N.A. v. Superior Court, 990 P.2d 591, 594–96 (Cal. 2000) (rejecting the fiduciary exception in a trustee-beneficiary case because statutory attorney-client privilege did not permit judicially created exceptions), and Huie v. DeShazo, 922 S.W.2d 920, 922–25 (Tex. 1996) (rejecting the fiduciary exception in a trustee-beneficiary case), with Wachtel, 482 F.3d at 236–37 (declining to apply the fiduciary exception to an insurer who sells, but does not manage, insurance to ERISA-regulated parties), and Bland v. Fiatallis N. Am., Inc., 401 F.3d 779, 788–89 (7th Cir. 2005) (declining to apply the fiduciary exception to an employer amending or

terminating an ERISA plan), and Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1415–16 (11th Cir. 1994) (declining to apply the Garner doctrine to a union in a suit brought by union members because only a tiny percentage of union members were members of the class and the union class members' interests conflicted with union members not in the class).

As developed in the United States, courts have based the fiduciary exception on two justifications. See Riggs, 355 A.2d at 712–14. First, the fiduciary is not the attorney's exclusive client, but acts as a proxy for the beneficiary. See, e.g., Mett, 178 F.3d at 1063 ("[A]t least as to advice regarding plan administration, a trustee is not the real client and thus never enjoyed the privilege in the first place." (internal quotation marks omitted)); Riggs, 355 A.2d at 713 ("As a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served."). Under this justification, the fiduciary exception is but a logical extension of the client's control of the attorney-client privilege. Second, the fiduciary has a duty to disclose all information related to trust management to the beneficiary. See e.g., Becher, 129 F.3d at 72 ("[An] ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan."); Riggs, 355 A.2d at 714 ("[T]rustees . . . cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege."). Under this second justification, "the fiduciary exception can be understood as an instance of the attorney-client privilege giving way in the face of a competing legal principle," the duty to disclose. Mett, 178 F.3d at 1063.

No federal court of appeals has addressed whether the fiduciary exception applies to the United States as trustee over tribal assets and funds. However, federal trial courts have previously applied the fiduciary exception to the United States in at least three tribal trust cases—twice in the Court of Federal Claims and once in a district court. See Osage Nation v. United States, 66 Fed. Cl. 244, 247–53 (2005); Cobell v. Norton, 212 F.R.D. 24, 27–29 (D.D.C. 2002); Shoshone Indian Tribe of Wind River Reservation, Wy. v. United States, Nos. 458-79 and 459-79 (Fed. Cl. May 16, 2002), attached at Jicarilla Apache Nation v. United States, 88 Fed. Cl. 1, 35 (2009). With this background in mind, we now turn to the question that the United States raises in its petition.

II.     The Fiduciary Exception Applied to Indian Trusts

The United States' relationship with the Indian tribes is sufficiently similar to a private trust to justify applying the fiduciary exception. Therefore, we hold that the United States cannot deny an Indian tribe's request to discover communications between the United States and its attorneys based on the attorney-client privilege when those communications concern management of an Indian trust and the United States has not claimed that the government or its attorneys considered a specific competing interest in those communications. The United States' general assertion that the Secretary of the Interior's other statutory obligations "may occasionally be in tension with interests regarding tribal lands or other non-monetary assets," does not diminish its exacting responsibilities as a trustee so as to warrant shielding the trust beneficiary from legal advice on trust management. Accordingly, we adopt the fiduciary exception in tribal trust cases. We do not address whether the fiduciary exception applies when the government or its attorneys considered a specific competing interest in those

communications, such as statutes governing endangered species or natural resources. Nor do we address whether the fiduciary exception applies to documents privileged as attorney work product. In the case before us, however, both justifications for the fiduciary exception support its application.

A. A. Identity of the Client

As the Court of Federal Claims described, the attorney-client communications at issue here were for the benefit of Jicarilla and other Indian tribes. Jicarilla Apache Nation v. United States, 88 Fed. Cl. 1, 6, 13–19 (2009). Interior was seeking advice on behalf of the tribes on how to manage trust funds and other tribal assets, and the attorneys were giving advice on trust management ultimately for the benefit of the tribes. Accordingly, Interior was not the government attorneys' exclusive client, but acted as a proxy for the beneficiary Indian tribes.

Jicarilla's status as the "real client" stems from its trust relationship with the United States. Riggs Nat'l Bank of Wash., D.C. v. Zimmer, 355 A.2d 709, 713 (Del. Ch. 1976). The Supreme Court has affirmed "the undisputed existence of a general trust relationship between the United States and the Indian people." United States v. Mitchell, 463 U.S. 206, 225 (1983); see also Cherokee Nation v. Ga., 30 U.S. (5 Pet.) 1, 17 (1831) (describing the relationship of the Indian tribes to the United States as "ward to his guardian" and clearly establishing the now longstanding and accepted basis of the trust relationship between the United States and Indian tribes). "All of the necessary elements of a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds)." Id. This general trust relationship rests on a long history of asset management and statutory mandates to Interior. As the trial court noted, "'Nearly every piece of modern legislation

dealing with Indian tribes contains a statement reaffirming the trust relationship between tribes and the federal government.'" Jicarilla, 88 Fed. Cl. at 5 (quoting Felix Cohen, Handbook of Federal Indian Law § 5.04(4)(a) (2005)). We think that the statutes that the trial court cites amply demonstrate that relationship. See id.; see also 25 U.S.C. § 162(a) (2006) (trust investment); § 450j (contract administration); § 458cc (funding agreements); § 3120 (forest resources); § 3303 (education); § 3701 (agricultural resources); § 4021 (trust fund management); §§ 4041–43 (special trustee). Indeed, like the fiduciary duties in other statutory trusts, the United States' trust duties to tribes "draw much of their content from the common law of trusts." Varity Corp. v. Howe, 516 U.S. 489, 496 (1996) (comparing fiduciary duties under ERISA to the common law of trusts). Accordingly, common law trust principles should generally apply to the United States when it acts as trustee over tribal assets. See United States v. White Mtn. Apache Tribe, 537 U.S. 465, 475 (2003) (applying the common law principle that a trustee must preserve the trust corpus to the United States as trustee of tribal assets); Shoshone Indian Tribe of Wind River Reservation v. United States, 364 F.3d 1339, 1348 (Fed. Cir. 2004) (applying the common law principle of trustee repudiation to the United States as trustee of tribal assets). Moreover, the general trust relationship justifies straightforward application of the fiduciary exception in this case, instead of the multifactor balancing test that courts apply in derivative shareholder actions. Compare Wynne v. Humbertson, 27 Beav. 421, 423, 54 Eng. Rep. 165, 166 (1858) (fiduciary exception applied in trust case), and Riggs, 355 A.2d at 712–14 (same), with Garner, 430 F.2d at 1104 (shareholder derivative action identifying nine factors for good cause to pierce attorney-client privilege). We find the government's arguments to the contrary unpersuasive and address each in turn.

## 1. Duty of Loyalty to the Tribes

The United States relies primarily on <u>Nevada v. United States</u>, 463 U.S. 110 (1983) for its argument that its relationship with the tribes is very different from a traditional fiduciary's relationship to beneficiaries.

In <u>Nevada</u>, the Supreme Court held that res judicata barred an action by the United States in 1973 seeking additional water rights on behalf of the Pyramid Lake Indian Reservation because the United States had already sued in 1913 to adjudicate those same water rights. <u>Id.</u> at 143. The Court also addressed the United States' obligations to the reservation and its obligation to comply with the Reclamation Act of 1902. The Reclamation Act "required the Secretary of the Interior to assume substantial obligations with respect to the reclamation of arid lands in the western part of the United States." <u>Id.</u> at 128. The Court explained that the United States would not violate its trust obligations to a tribe by performing another task also required in the Reclamation Act. The Court noted that Congress delegated to the Secretary of the Interior "both the responsibility for the supervision of the Indian tribes and the commencement of reclamation projects in areas adjacent to reservation lands." <u>Id.</u> Based on this dual responsibility, the Court wrote that "it is simply unrealistic to suggest that the Government may not perform its obligation to represent Indian tribes in litigation when Congress has obliged it to represent other interests as well." <u>Id.</u> The Court thus reasoned that this dual responsibility altered the government's duties as a fiduciary: "[T]he Government cannot follow the fastidious standards of a private fiduciary, who would breach his duties to his single beneficiary solely by representing potentially conflicting interests without the beneficiary's consent." <u>Id.</u>

Misc. 908                                   16

The United States' reliance on <u>Nevada</u> and its argument that other statutory duties undermine application of the fiduciary exception are not relevant in this case. To be sure, <u>Nevada</u> recognizes that the Secretary of the Interior may at times be required to balance fiduciary duties with other statutory duties. However, the government does not argue in its petition that it in fact had to balance competing interests, such as land or mineral rights, in the communications at issue here. We note that this is the trust <u>funds</u> phase of the case. According to the parties, this phase involves only the management of accounts, not of other assets such as land or mineral rights, where the Secretary of the Interior might have other statutory duties. The Navajo Nation and Pueblo of Laguna, as amici curiae, correctly note that "[s]ince the documents at issue relate only to trust <u>funds</u>, potential privilege claims for unspecified documents regarding other types of trust assets based on other statutory regimes are beyond the scope of the petition." Thus, we do not reach the issue whether the fiduciary exception applies when the government or its attorneys considered a specific competing interest in those communications.

2. Source of Payment for Legal Advice

The United States also argues that because its attorneys are paid "out of congressional appropriations, not the trust corpus," their relationship with the tribes should not allow application of the fiduciary exception. The United States explains that "[w]hile the source of payment [for legal advice] may not, by itself, determine whether the fiduciary exception applies, it does serve as another factor counseling against application of the exception in this context."

The United States correctly identifies the source of payment as one factor in determining whether a beneficiary can access attorney-client privileged information.

See, e.g., <u>Wachtel v. Health Net, Inc.</u>, 482 F.2d 225, 235–36 (3d Cir. 2007) ("[W]hen a trustee pays counsel out of trust funds, rather than out of its own pocket, the payment scheme is strongly indicative of the beneficiaries' status as the true clients."); <u>Riggs</u>, 355 A.2d at 712 ("[W]hen the beneficiaries desire to inspect opinions of counsel for which they have paid out of trust funds effectively belonging to them, the duty of the trustees to allow them to examine those opinions becomes even more compelling."). In contrast to a private trust case, we do not think the source of payment is helpful when the trustee imposes the trust on the beneficiaries. The fact that the United States does not use trust funds to pay for legal advice on how to manage a trust it imposed on the Indian tribes does not suggest that the tribes should be barred from accessing that advice. Moreover, the government's fiduciary duties of providing Jicarilla "with complete and accurate information overrides any implication that must arise from the fact that the [g]overnment pays its own legal fees." <u>Osage Nation v. United States</u>, 66 Fed. Cl. 244, 249 (2005) (internal quotation marks omitted) (alterations in the original).

       3.  Secretary of the Interior's Ability to Obtain Confidential Legal Advice

The United States also argues that applying the fiduciary duty in this case would impair the Secretary of the Interior's ability to obtain confidential legal advice. Because this phase of the litigation involves only the United States' duties regarding trust fund accounts, we disagree with the government's position. Of course, the basic concern could be stated by any trustee. The trustee may feel that its ability to obtain legal advice is impaired because the advice is not shielded from its beneficiary. But the exception applies because the fiduciary is not the exclusive client of the attorney rendering advice and because a fiduciary has a duty to keep the beneficiary informed of issues related to trust administration. Though the United States argues that it would not

be able to obtain legal advice about other statutes that may require it to take action related to property that is not a trust fund account, those arguments are not relevant in this case and it has failed to allege any actual conflict.

B. Duty of Disclosure

The fiduciary exception's second justification also supports applying the doctrine in this case. As a general trustee, the United States has a fiduciary duty to disclose information related to trust management to the beneficiary Indian tribes, including legal advice on how to manage trust funds. See Restatement (Third) of Trusts § 82(2) (2007) ("[A] trustee also ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings."); Restatement (Second) of Trusts § 173 (1959) ("The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust."). In addition to that basic duty, Congress has created an Office of Special Trustee "to provide for more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities to Indian tribes." 25 U.S.C. § 4041(1) (2006).

The United States argues that it does not have a fiduciary's duty to disseminate information to the tribes because Congress has required Interior to provide only specific types of information to tribes. The United States cites the 1994 Indian Trust Fund Management Reform Act, which required, inter alia, that Interior must provide certain information to tribes, including quarterly statements of performance and a letter

reporting the results of an audit. The United States did not identify the pertinent language of the statute, which states that "proper discharge of the trust responsibilities of the United States shall include (but are not limited to) . . . [p]reparing and supplying account holders with periodic statements of their account performance and with balances of their account which shall be available on a daily basis." 25 U.S.C. § 162a(d)(5) (emphasis added). Congress expressly recognized the possibility of trust responsibilities outside the statute. Therefore, the United States' arguments in this regard are completely without merit.

The D.C. Circuit came to a similar conclusion based on the United States' arguments that statutes have limited the United States' fiduciary duties to the tribes. That court wrote, "The fundamental problem with [the government's] claims is the premise that their duties are solely defined by the 1994 Act. The Indian Trust Fund Management Reform Act reaffirmed and clarified preexisting duties; it did not create them." Cobell v. Norton, 240 F.3d 1081, 1100 (D.C. Cir. 2001).

In sum, "the government has other trust responsibilities not enumerated in the 1994 Act." Id. Those other responsibilities include the common law duty to disclose information.

CONCLUSION

The United States has not shown that the Court of Federal Claims erred in determining that the government could not withhold documents related to the management of trust fund accounts from Jicarilla based on the attorney-client privilege. The United States' right to issuance of the writ is far from "clear and indisputable," Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953) (internal quotation marks omitted), because the government improperly asserted the attorney-client privilege as a

Misc. 908                          20

trustee against the trust beneficiaries. We thus decline to grant a writ of mandamus. Instead of "avoid[ing] the development of doctrine that would undermine the [attorney-client] privilege," In re Regents of the Univ. of Cal., 101 F.3d 1386, 1387 (Fed. Cir. 1996), the trial court correctly demarcated the privilege's limits.

Accordingly,

IT IS ORDERED THAT:

(1)    The petition for a writ of mandamus is denied.

(2)    The motion for leave to file a reply is granted.

(3)    The motion for leave to file a shortened brief amicus curiae is granted. The original motion for leave to file a brief amicus curiae is moot.

(4)    The temporary stay of the order of the Court of Federal Claims that required production is lifted.

FOR THE COURT


__December 30, 2009__          ___*/s/ Jan Horbaly*___
Date                  Jan Horbaly
                          Clerk


cc:  Brian C. Toth, Esq.
     Steven D. Gordon, Esq.
     Alan R. Taradash, Esq.
     Judge, Court of Federal Claims
     Clerk, Court of Federal Claims