Kimberly WARFLE, a minor, by and
through her mother and next friend,
Melissa GUFFEY, Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Respondent.

No. 05–1399V.

United States Court of Federal Claims.

Filed Under Seal: Feb. 19, 2010.

Reissued: March 9, 2010.[1]

1. An unredacted version of this opinion was issued under seal on February 19, 2010. The parties were given an opportunity to propose redactions, but no such proposals were made. In this released opinion, the court has corrected minor errors found in the prior sealed opinion.

Kimberly Warfle, by and through her mother, Melissa Guffey, pro se.[2]

Melonie J. McCall, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General Tony West, for respondent.

**2.** Petitioner was formerly represented in this matter by Paul S. Dannenberg, Huntington, Vermont.

**3.** General Order # 9 states—
In an effort to ensure that petitioners and counsel alike are fairly and fully compensated and to avoid unnecessary litigation in correct-

## ORDER

ALLEGRA, Judge.

Pending before the court, in this vaccine compensation case, is petitioner's motion to review an order made by a Special Master regarding an application for interim attorney's fees.

### I.

On December 30, 2005, petitioner, Melissa Guffey, filed a petition for vaccine injury compensation under the National Childhood Vaccine Injury Act of 1986 (the Vaccine Act), 42 U.S.C. §§ 300aa–1 to –34, on behalf of her minor daughter, Kimberly Warfle. An evidentiary hearing on entitlement was held on December 18, 2008. For reasons unexplained, a decision on compensation has not yet been issued.

On February 12, 2009, petitioner's counsel moved for an $86,089 award of interim attorney fees and costs. However, having lost contact with his client, and despite alleged numerous attempts to contact her, petitioner's counsel was unable to obtain his client's signature on a statement delineating the costs borne between him and her as required by General Order # 9.[3] On March 24, 2009, petitioner's counsel filed a motion seeking relief from the latter requirement. He attached to this motion an affidavit outlining his efforts to contact petitioner and averring that petitioner had paid only $50 toward the costs of the litigation. On April 22, 2009, Special Master Abell denied the motion for relief, refusing to relieve petitioner of the requirements of General Order # 9. The Special Master thereupon found that the fee application was incomplete and, on that basis, concluded that the time of the Secretary of Health and Human Services (respondent) to respond to the application had not yet commenced. This has apparently left the interim fee request in limbo.

ing oversights and errors, the court shall require in all future applications for fees and costs a statement signed by petitioners and counsel which clearly delineates which costs were borne by counsel and which costs were borne by petitioners, including the amount of any retainer that has been paid.

On May 21, 2009, petitioner filed a motion for review of the Special Master's order. Thereafter, in response to a court order, the parties filed memoranda of law on the question whether this court has jurisdiction to review the Special Master's order. While petitioner claimed that such jurisdiction existed, respondent demurred. On October 5, 2009, petitioner's counsel filed a motion to withdraw as attorney for petitioner. On November 10, 2009, this court granted a motion by petitioner's counsel to withdraw.

## II.

"The Court of Federal Claims is a creature of statute," the Federal Circuit has stated, and "its power is limited to what Congress has expressly given it." *Martin v. Sec'y of Health and Human Servs.*, 62 F.3d 1403, 1405 (Fed.Cir.1995); *see also Beck v. Sec'y of Health and Human Servs.*, 924 F.2d 1029, 1036 (Fed.Cir.1991). Like other federal courts, this court thus is solemnly obliged to address obvious questions concerning its subject matter jurisdiction. *See Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934); *LaMear v. United States*, 9 Cl.Ct. 562, 568 n. 6, *aff'd*, 809 F.2d 789 (Fed.Cir.1986). Mindful of this, not to mention the somewhat unique procedural posture of this case, the court ordered the parties to address the issue of jurisdiction here. Having reviewed their filings, the court now concludes that it lacks jurisdiction to review the order in question.

## A.

The Federal Circuit has ruled that the Vaccine Act authorizes the Special Masters to make interim attorney fee awards. *Avera v. Sec'y of Health and Human Servs.*, 515 F.3d 1343 (Fed.Cir.2008). There is indication, moreover, that, in at least some instances, a decision granting or denying interim fees may be reviewed by this court under the authority conferred by 42 U.S.C. § 300aa–12(e)(1). Suggesting this, Vaccine Rule 13(b) provides that "[t]he decision of the special master on [a] fee request—including a request for interim fees—constitutes a separate decision for purposes of Vaccine Rules

11, 18, and 23." The cross-referenced rules—11, 18 and 23—govern, *inter alia*, the entry of judgment and motions for review. On one occasion, indeed, this court has gone so far as to conclude that a decision on interim fees may be reviewed while an appeal of a final compensation decision by a Special Master is pending before the Federal Circuit. *See Doe v. Sec'y of Health and Human Servs.*, 89 Fed.Cl. 661 (2009). Less clear is whether a decision on interim fees may be reviewed before a final decision on compensation has been rendered by the Special Master. *See Shaw v. Sec'y of Health and Human Servs.*, 88 Fed.Cl. 463, 465 (2009).

The latter situation is not this case, for there has been neither a compensation decision nor an interim fee decision here. The order in question, rather, merely holds that petitioner's failure to comply with General Order # 9 prevents consideration of her request for interim fees. That this ruling neither granted nor denied that request arguably is pivotal because both the Vaccine Act and the Vaccine Rules speak in terms of the review of a "decision." *See* 42 U.S.C. § 300aa–12(e) (2006); RCFC, Appendix B, Vaccine Rules 23(a) and 27. The latter term, at least in legal climes, connotes some ultimate resolution or final disposition of the subject matter presented—one by which the court rendering the decision "disassociates itself." *Mohawk Indus., Inc. v. Carpenter*, —— U.S. ——, 130 S.Ct. 599, 604–05, —— L.Ed.2d —— (2009); *see also Widdoss v. Sec'y of Health and Human Servs.*, 989 F.2d 1170, 1175–76 (Fed.Cir.), *cert. denied*, 510 U.S. 944, 114 S.Ct. 381, 126 L.Ed.2d 331 (1993); *United States Treasury v. Synthetic Plastics Co.*, 52 C.C.P.A. 967, 341 F.2d 157, 157 (C.C.P.A.1965) ("decision" means "a dispositive decision in which a right has been adjudicated"). That decisiveness is lacking in an order, such as the one at issue, that merely addresses a procedural incident in a lawsuit. This view finds support in vaccine cases that have refused to treat interim orders analogous to the order in question as "decisions" within the meaning of 42 U.S.C. § 300aa–12 and associated provisions.[4] To

---

4. *See, e.g., Shaw*, 88 Fed.Cl. at 464 (holding that

a special master's order deferring consideration

rule otherwise would open the door to a variety of piecemeal appeals, a development that plainly would encroach upon the Special Masters' ability to manage efficiently their substantial caseloads. *See generally, Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (describing the disruption caused by "piecemeal appeals").

### B.

This is not to say this is an easy case. Petitioner's counsel asserts that he has been unable to reach the petitioner and that the Special Master deviated from prior practice in failing to afford him relief from General Order # 9.[5] Although he has since withdrawn from the case, petitioner's counsel (more accurately, petitioner's former counsel) further claims that he needs the funds in question. He argues that he should not be forced to await the conclusion of this litigation in order to obtain fees to which he is already entitled. Based on these assertions, he contends that even if the order of the Special Master is not a "decision," it should, nonetheless, be reviewed under the collateral order doctrine established by *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

■ Cohen declared immediately appealable those rulings that "fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. 1221. In *Cohen,* the corporate defendant in a shareholder derivative action sought indemnity, pursuant to a state statute, for the expenses and attorney's fees of its defense from the shareholder who had brought the action. *Id.* at 545–46, 69 S.Ct. 1221. The district court, however, held that this statute was inapplicable. *Id.* at 545, 69 S.Ct. 1221. Though the Supreme Court concluded that the district court's order refusing to apply the statute was not a final judgment, it held that appellate jurisdiction over the pretrial order existed, nonetheless, identifying three factors central to this conclusion. First, the district court's ruling denying application of the state statute was in no way "tentative, informal or incomplete." *Id.* at 546, 69 S.Ct. 1221. Second, this decision was wholly unrelated to the merits of the action and would not, as a result, be affected by further proceedings in

---

of petitioner's interim fee petition until after judgment on entitlement was not an appealable decision within the meaning of the Vaccine Act); *Vessels v. Sec'y of Health and Human Servs.,* 65 Fed.Cl. 563, 566–67 (2005) (noting that "a pre-compensation decision properly before the special master may not be appealed to this court"); *Weiss v. Sec'y of Health and Human Servs.,* 59 Fed.Cl. 624, 625 (2004) (refusing to review a special master's order rejecting an expert opinion and dismissing one of three alternative claims because such an interim ruling is not an appealable decision); *Spratling v. Sec'y of Health and Human Servs.,* 37 Fed.Cl. 202, 203 (1997) (holding that a special master's interim order regarding entitlement was not a reviewable "decision" because the order delayed final judgment to afford petitioner the opportunity to present additional expert evidence; *see also Lemire v. Sec'y of Health and Human Servs.,* 60 Fed.Cl. 75, 79–80 (2004) (finding that a special master's order reinstating a claim previously dismissed as time-barred was "an interlocutory matter" and not an appealable "decision" within the meaning of the Vaccine Act).

5. *See Huffman v. Sec'y of Health and Human Servs.,* 2010 WL 431741, at *1 (Fed.Cl.Spec.Mstr. Jan. 14, 2010) (allowing interim fees with any

costs personally incurred by petitioner to "be addressed in a subsequent award of fees and costs"); *Teller v. Sec'y of Health and Human Servs.,* 2009 WL 1856199, at *1 (Fed.Cl. Spec.Mstr. June 8, 2009) (same); *Harris v. Sec'y of Health and Human Servs.,* 2006 WL 3847661, at *1 (Fed.Cl.Spec.Mstr. Dec. 8, 2006) (granting fees and costs to attorney who attempted but failed to contact petitioner because "[counsel] has complied with the spirit and general purpose of General Order # 9 in protecting Petitioner's interests"); *Fraschilla v. Sec'y of Health and Human Servs.,* 2009 WL 1856462, at *1 (Fed.Cl. Spec.Mstr. June 2, 2009) (awarding attorney fees and costs after finding that an affidavit outlining counsel's failed attempts to contact petitioner satisfied the requirements of General Order # 9); *Bailey v. Sec'y of Health and Human Servs.,* 2008 WL 4601167, at *1 (Fed.Cl.Spec.Mstr. Sept. 18, 2008) (same); *Diconza v. Sec'y of Health and Human Servs.,* 2007 WL 5160379, at *1 (Fed.Cl. Spec.Mstr. Apr. 30, 2007) (same); *Bergem v. Sec'y of Health and Human Servs.,* 2006 WL 197290, at *1 (Fed.Cl.Spec.Mstr. Jan. 5, 2006) (same).

the case. *Id.* Finally, the lower court order was too important to be denied immediate review, for the asserted right of the corporation to have its litigation costs secured prior to the onset of trial would be "lost, probably irreparably," by the time of final judgment. *Id.; see also Johnson v. Jones,* 515 U.S. 304, 311–12, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468–69, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

Of course, a threshold inquiry is whether this doctrine applies here at all, for this case, unlike *Cohen,* obviously does not involve 28 U.S.C. § 1291. The Court in *Cohen* parsed the latter statute in holding that it was not forging an exception to its finality requirement, but rather was adopting, consistent with prior precedent, a "practical rather than a technical construction" thereof. 337 U.S. at 546, 69 S.Ct. 1221; *see also Will v. Hallock,* 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006); *Firestone,* 449 U.S. at 374, 101 S.Ct. 669 (noting that *"Cohen* did not establish new law"). At first blush, one might think that the focus on section 1291 is a distinction without a difference here, because even though we are dealing with a different statute, the Federal Circuit's decision in *Widdoss* has several times been cited for the notion that decisions under section 300aa–12, like those under section 1291, must be "final decisions." *See, e.g., Shaw,* 88 Fed. Cl. at 465. But, *Widdoss,* in fact, holds no such thing, merely concluding that "the proceedings on a petition conclude with the special master's final act of 'issu[ing] a decision on the petition.'" 989 F.2d at 1175. If anything, *Widdoss* illustrates the perils of too willingly treating the finality jurisprudence of section 1291 as an overlay on the analysis of the vaccine review provisions.

That said, the conspicuous absence, in section 300aa–12, of the word "final," as well as the broader sweep of this court's vaccine reviews (as compared to ordinary appeals), both militate in favor of construing that section to accommodate something akin to a collateral order doctrine. Logic forcefully suggests that if collateral orders are reviewable under a statute that requires a "final decision," they ought be reviewable under one that merely requires a "decision." That logic has taken hold in various Federal Circuit opinions that have invoked a form of the collateral doctrine in reviewing interim orders of the Court of Appeals for Veterans Claims under 38 U.S.C. § 7292—a statute that, like section 300aa–12, authorizes appeals of "decisions." *See Williams v. Principi,* 275 F.3d 1361, 1364 (Fed.Cir.2002); *Myore v. Principi,* 323 F.3d 1347, 1351 (Fed. Cir.2003); *see also Jones v. Nicholson,* 431 F.3d 1353, 1358 (Fed.Cir.2005); *Elkins v. Gober,* 229 F.3d 1369, 1374–75 (Fed.Cir. 2000).[6] These decisions strongly suggest that some form of a collateral order doctrine ought to apply in vaccine cases.

█ But, it is one thing to posit such a doctrine, another to define its narrow boundaries, and quite another to conclude that it applies here. Again, " '[t]o come within the 'small class' of ... *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.' " *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (quoting *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. 2454); *see also Johnson v. Jones,* 515 U.S. 304, 310–11, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Competitive Techs., Inc. v. Fujitsu Ltd.,* 374 F.3d 1098, 1102

**6.** The Federal Circuit has likened its review of decisions of the Veterans Court to appeals of administrative decisions, noting that the latter are reviewable where " 'the process of the administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and ... rights or obligations have been determined or legal consequences will flow from the agency action.' " *Dewey Elecs. Corp. v. United States,* 803 F.2d 650, 654 (Fed.Cir.1986) (quoting *Port of Boston Ma-*

*rine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)). Under this standard, the Federal Circuit has held that individual claims by a veteran may be separately appealable while the remainder of the case remains before either the Veterans Board or Veterans Court. *See Maggitt v. West,* 202 F.3d 1370, 1376 (Fed.Cir.2000); *Ledford v. West,* 136 F.3d 776, 779 (Fed.Cir. 1998); *Barrera v. Gober,* 122 F.3d 1030, 1032 (Fed.Cir.1997).

(Fed.Cir.2004), *cert. denied,* 546 U.S. 812, 126 S.Ct. 44, 163 L.Ed.2d 45 (2005). All three requirements—conclusivity, separateness and unreviewability—must simultaneously be satisfied before an order is appealable under this doctrine. *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 375, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) ("[A] party seeking appeal must show that all three requirements are satisfied. . . ."); *Yakowicz v. Com. of Pa.,* 683 F.2d 778, 783 (3rd Cir.1982). This conjunction of limitations is stringently applied to prevent the doctrine from overpowering the substantial interests underlying the "final judgment" rule—to further judicial economy and prevent unnecessary delays of litigation. Indeed, in recent cases applying the *Cohen* doctrine, the Supreme Court seemingly has added a fourth limitation, emphasizing that the class of eligible orders must remain "narrow and selective in its membership," limited generally to those where delaying review would "imperil a substantial public interest." *Will,* 546 U.S. at 350, 353, 126 S.Ct. 952; *see also Mohawk,* 130 S.Ct. at 605; *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Lauro Lines s.r.l. v. Chasser,* 490 U.S. 495, 503, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989) (Scalia, J., concurring). So understood, the collateral appeal requirements "help pick out a class of orders where the error-correcting benefits of immediate appeal likely outweigh the costs, delays, diminished litigation coherence, and waste of appellate court time potentially associated with multiple appeals." *Behrens v. Pelletier,* 516 U.S. 299, 315, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *see also Will,* 546 U.S. at 349–50, 126 S.Ct. 952.

Mindful of these limitations, courts more often than not have refused to review orders denying interim fees under the *Cohen* doctrine. A significant majority of decisions conclude that such interim orders fail the third *Cohen* criteria in that the order is deemed to be effectively reviewable after final judgment on the underlying merits. *In re Diet Drugs Prods. Liab. Litig.,* 401 F.3d 143, 159–60 (3d Cir.2005); *United States v.*

*City of San Diego,* 1994 WL 201176, at *2 (9th Cir. May 23, 1994); *Shipes v. Trinity Indus., Inc.,* 883 F.2d 339, 344–45 (5th Cir. 1989); *Haralson v. Fed. Home Loan Bank Bd.,* 837 F.2d 1123, 1125 (D.C.Cir.1988); *Yakowicz,* 683 F.2d at 783; *Hastings v. Maine–Endwell Cent. School Dist.,* 676 F.2d 893, 896 (2d Cir.1982). Relatedly, orders denying such awards have been found wanting under the conclusivity prong of the *Cohen* test as they often are viewed as a mere prelude to the final determination of what fees are owed. *See Diet Drugs Prods. Liab.,* 401 F.3d at 159; *City of San Diego,* 1994 WL 201176, at *2; *Dardar v. Lafourche Realty Co.,* 849 F.2d 955, 959 (5th Cir.1988); *Hastings,* 676 F.2d at 896; *see also Nosik v. Singe,* 40 F.3d 592, 597 (2d Cir.1994). By comparison, those cases that have held such orders to be immediately reviewable generally have involved practical exigencies or irreparable harm, such as indication that the progress of the underlying litigation would be imperiled without such an award. *See, e.g., Crowder v. Hous. Auth.,* 908 F.2d 843, 847 (11th Cir.1990).

■ Despite some unusual facts, there is actually little to distinguish this case categorically from those in which collateral appeals of interim fee decisions have been denied. The Special Master's order does not conclusively determine the amount of fees owed petitioner, nor is the determination (at least in this case) that the requirements of General Order #9 are inflexible unreviewable on later appeal. There also is no threat here that the denial of an interim fee recovery will bring the underlying litigation to a halt as petitioner's counsel, in fact, has already withdrawn. Presumably, the underlying suit will be resolved shortly—either based upon the merits or petitioner's failure to prosecute the case. At that juncture, petitioner's former counsel may pursue not only the fees in question, but those that accumulated from the time this motion for review was filed until the time he withdrew.[7]

---

7. Indeed, this matter is now pending before the Special Master based on a filing made by peti-

tioner's former counsel on January 27, 2010.

If petitioner resurfaces before that time, the issue presented by this motion for review will be mooted; if she does not, petitioner's counsel may again seek relief from General Order # 9 and, barring that relief, review from this court. That such review might not be as expeditious as counsel desires is not enough to satisfy the unreviewability prong of the *Cohen* test. As noted by the Seventh Circuit, "[a]n interim fee award does not cease to be such merely because the attorney receiving the award has withdrawn from the case." *Richardson v. Penfold*, 900 F.2d 116, 118 (7th Cir.1990). Accordingly, while not clearly the case, the current state-of-play tilts in favor of the conclusion that the Special Master's ruling is neither conclusive nor unreviewable upon a later appeal. And, even if this were not the case, it remains that the issue presented here is not the sort of "serious and unsettled question" that has traditionally warranted collateral review. *Nixon v. Fitzgerald*, 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *see also Will*, 546 U.S. at 353, 126 S.Ct. 952.

The court recognizes that "delayed" review of the issue presented might not be viewed by petitioner's counsel as being fully effective. Indeed, it is not unreasonable to argue that the value of recovering interim fees is diminished if a refusal to order such fees is

8. Contrary to petitioner's claim, the court does not believe that the collateral appealability of an order impacting interim fees can depend upon the degree to which the requesting attorney needs the money. In general, and increasingly in recent times, the Supreme Court has eschewed a case-by-case approach to deciding whether an order is collaterally appealable, in favor of a more categorical approach that does not rise or fall on the individual circumstances encountered. *See Digital Equip. Corp.*, 511 U.S. at 876–77, 114 S.Ct. 1992 (indicating this preference); *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) (same).

9. Petitioner also asks this court to issue a writ of mandamus to the Special Master, ordering him to consider the interim fee request. Every indication is that this court has the authority to issue a writ of mandamus under the All Writs Act: "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2006); *see also Cox v. West*, 149 F.3d 1360, 1363

not subject to immediate review. But, that policy consideration is insufficient to allow this court to exercise jurisdiction that it simply does not have. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474–75, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007). While petitioner claims to the contrary, *Avera* only finds that the Special Masters are authorized to grant interim fees; it does not assure that every form of order frustrating the allowance of such fees is immediately appealable. Nor could the Federal Circuit have easily reached the latter conclusion—for, as it turns out, the very statutes that the court analogized to the Vaccine Act in holding that the discretion to award interim fees exists, *see Avera*, 515 F.3d at 1351–52, are the ones other courts have construed in holding that denials of interim fee awards are generally not subject to collateral appeal. *See Yakowicz*, 683 F.2d at 783.

### III.

In the end, despite some admittedly countervailing considerations,[8] this court must conclude that the ruling in question cannot be considered under a version of the collateral order doctrine. Accordingly, petitioner's motion for review must be dismissed.[9]

(Fed.Cir.1998) (holding that the Court of Veterans Appeals, an Article I court, has the authority to issue writs of mandamus). Yet, mandamus is available only in extraordinary cases to correct a usurpation of judicial power or clear abuse of discretion. *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004); *see also In re United States*, 590 F.3d 1305, 1308 (Fed.Cir.2009); *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed.Cir. 1996), *cert. denied*, 520 U.S. 1193, 117 S.Ct. 1484, 137 L.Ed.2d 695 (1997). A party seeking a writ of mandamus bears the burden of proving that it has no other means of attaining the relief desired, *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), and that its "right to issuance of the writ is 'clear and indisputable,'" *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (quoting *United States ex rel. Bernardin v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 43 L.Ed. 559 (1899)); *see also In re United States*, 590 F.3d at 1308. Since petitioner has alternatives for obtaining the relief requested, mandamus is inappropriate here.

IT IS SO ORDERED.[10]

---

**10.** This order shall be unsealed, as issued, after March 5, 2010, unless the parties, pursuant to Vaccine Rule 18(b), identify protected and/or privileged materials subject to redaction prior to said date. Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons for that redaction.

