129 F.3d 268
 39 Fed.R.Serv.3d 614, 21 Employee Benefits Cas. 2025,
Pens. Plan Guide (CCH) P 23939S
 In re LONG ISLAND LIGHTING COMPANY, Retirement Income Plan
Of Long Island Lighting Company and its
predecessor plans, and Robert X.
Kelleher, Petitioners.
Robert T. BECHER, Roger Hennessey, Kenneth Hutchenson,
Daniel Mcdiarmid, Paul Morea, Robert Pohalski,
Joseph Rosado and John Thalmann, Plaintiffs,
v.
LONG ISLAND LIGHTING COMPANY, Retirement Income Plan Of Long
Island Lighting Company and its predecessor plans,
and Robert X. Kelleher, Defendants.
 Docket No. 97-3064
 United States Court of Appeals,
Second Circuit.
 Submitted Aug. 26, 1997.
Decided Nov. 12, 1997.
 
 LeBoeuf, Lamb, Greene & MacRae, LLP, Michael Lesch, Frank Cummings, John G. Nicolich, of counsel, New York City; and Leonard P. Novello, General Counsel, Long Island Lighting Company, (Stephen W. McCaffrey, Cynthia R. Clark, of counsel), Hicksville, NY, for Petitioners.
 Weil, Gotshal & Manges LLP, James W. Quinn, Jeffrey S. Klein, Nicholas J. Pappas, of counsel, New York City, and Curto, Barton & Alesi, P.C., Anthony Curto, Barbara Shaheen Alesi, Joseph P. Glynn, of counsel, Melville, NY, for Respondents.
 Before: MESKILL and JACOBS, Circuit Judges, and TSOUCALAS, Judge*
 JACOBS, Circuit Judge.
 
 
 1
 Petitioners Long Island Lighting Company ("LILCO") and its present and predecessor employee-benefit plans (and plan trustee) seek a writ of mandamus on the ground that certain documents they have been ordered to produce in this action are protected by the attorney-client privilege. Respondents are current and former LILCO employees who brought this certified class action seeking damages and equitable relief under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Respondents moved for an order compelling production of documents relating to communications between Edward Watts, a manager of LILCO's Insurance Department, and Herbert Leiman, Esq., a LILCO Senior Attorney. Respondents argue that LILCO, as plan fiduciary, cannot assert (or has waived) any privilege to shield its plan-related documents from scrutiny by the plan's beneficiaries.
 
 
 2
 After sorting out and directing the production of certain unprivileged documents that are not at issue here, Magistrate Judge Orenstein ruled that the remaining documents concern amendments to the plan--as to which LILCO did not act in a fiduciary capacity--rather than administration of the plan--as to which LILCO did act as a fiduciary. Relying on Siskind v. Sperry Retirement Program, 47 F.3d 498, 505 (2d Cir.1995), which holds that amendment of a retirement plan is not a fiduciary function under ERISA, the magistrate judge concluded that the documents were insulated from discovery by the attorney-client privilege (and adhered to that conclusion following a motion for reconsideration). In the course of the hearing, the magistrate judge observed that the documents so clearly addressed non-fiduciary matters that they did not "even come close to fiduciary." Counsel for respondents declined to "quibble with that," and argued instead "that because LILCO chose to use the same attorney for administration and non-administration issues, they've blown the privilege,...."
 
 
 3
 On appeal, the district judge ruled that Siskind was not determinative of the issue, concluded that "the claim of privilege is not sound," and ordered the production of the documents. Specifically, the district court held that "if a fiduciary of the plan uses the same lawyer to provide him advice as to plan amendment as he uses for plan administration, then the plan administrator must be understood to have either not intended or to have waived confidentiality as to his communications with that lawyer." The district court did not question the magistrate judge's determination that the documents related to plan amendment rather than plan administration, but found that LILCO "waived its privilege over the documents in question by using the same lawyer for amendment purposes as it used to represent the fiduciary of the employees."
 
 
 4
 The district court stayed production of the documents long enough to afford LILCO an opportunity to apply for a stay in this Court. LILCO filed its mandamus petition on August 11, 1997, and on August 14 filed a motion for a stay pending determination of that petition. We granted the stay on August 29, 1997.
 
 
 5
 We now issue the writ.
 
 DISCUSSION
 I. Availability of Mandamus Relief
 
 6
 Although mandamus is generally unavailable as a means of reviewing district court discovery orders, the writ is appropriate to review discovery orders that involve privilege where (i) the petition raises an issue of importance and of first impression; (ii) the petitioner's privilege will be lost if review must await final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege. In re Steinhardt Partners, 9 F.3d 230, 233 (2d Cir.1993) (quoting In re W.R. Grace & Co., 984 F.2d 587, 589 (2d Cir.1993)); Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 163 (2d Cir.1992); see also In re von Bulow, 828 F.2d 94, 96-100 (2d Cir.1987).
 
 A. Important Issue of First Impression
 
 7
 This petition raises an issue of first impression: whether an employer waives the attorney-client privilege with respect to all communications regarding a plan covered by ERISA by seeking advice as a plan fiduciary and as a non-fiduciary from the same attorney. It appears that the question has not been decided by any circuit, and has been touched on only indirectly by district courts.
 
 
 8
 Respondents argue that the issue is not novel because it can be resolved by applying two settled common-law principles: the joint-client rule and the fiduciary exception. Respondents therefore analogize this case to W.R. Grace, in which we refused to use the vehicle of mandamus to review an allegedly incorrect application of a well-developed principle on the ground that "we do not believe that determination of the doctrine's applicability in each case presents such a novel and important issue as to warrant mandamus review,...." 984 F.2d at 589. But this case more closely resembles In re von Bulow, in which we issued mandamus to review the extension of an established principle to an entirely new context. In re von Bulow, 828 F.2d at 97 (discussing district court's extension of the "fairness doctrine" to extra-judicial disclosures). Here we review the district court's extension of the fiduciary exception to compel disclosure of communications on non-fiduciary matters. Petitioners therefore prevail on the first prong of the test for availability of mandamus relief.
 
 B. Loss of the Privilege
 
 9
 If LILCO turns over the disputed documents, it will lose the privilege and will be unable to recoup the benefit of it on appeal. See, e.g., In re von Bulow, 828 F.2d at 99 ("[T]he concern that a remedy after final judgment cannot unsay the confidential information that has been revealed may account for the liberal use of mandamus in situations involving the production of documents or testimony claimed to be privileged...."). The absence of an effective remedy once the case reaches the appellate stage in the normal course of proceedings justifies the more liberal use of mandamus in the context of privilege issues.
 
 
 10
 C. Avoiding the Development of Discovery Practices or Doctrine Undermining the Privilege
 
 
 11
 We explained in In re von Bulow that mandamus may be justified by the potentially broad applicability and influence of the privilege ruling under attack:
 
 
 12
 [I]f the purpose for which the [attorney-client] privilege exists is to be effectuated, those discussions that are privileged must be predictable with some degree of certainty. An uncertain privilege ... is little better than no privilege. Because the district court's holdings establish a new attorney-client privilege rule of general applicability that threatens to upset this predictability, it merits prompt attention and resolution.
 
 
 13
 In re von Bulow, 828 F.2d at 100. Similarly, the district court's ruling here, in light of case law in other district courts, may call into question the status of confidences exchanged when employers seek legal counsel concerning ERISA plans, may cause prudent employers to retain alternate counsel, may prevent the most efficient use of an in-house law department, and may require calculation as to which lawyer to consult whenever advice is needed relating to a plan. Immediate resolution of this issue will prevent the development of doctrine and practices that unsettle the privilege.
 
 II. The Discovery Order
 
 14
 Under ERISA, an employer may perform both fiduciary functions and non-fiduciary functions. In line with other circuits, we have held that an employer acts as an ERISA fiduciary only in plan management or administration, not in the plan's design or amendment. See Siskind, 47 F.3d at 505; Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1524-25 & n. 33 (5th Cir.1994); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1161 (3d Cir.1990). The employer's ability to invoke the attorney-client privilege to resist disclosure sought by plan beneficiaries turns on whether or not the communication concerned a matter as to which the employer owed a fiduciary obligation to the beneficiaries.
 
 
 15
 An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan. See Martin v. Valley National Bank, 140 F.R.D. 291, 322 (S.D.N.Y.1991). As part of this obligation, the ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan. Id. (citing George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees, § 961 at 11 (rev.2d ed.1983)). An ERISA fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries. See Riggs Nat'l Bank v. Zimmer, 355 A.2d 709, 713-14 (Del.Ch.1976). Thus, an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration. This principle is the "fiduciary exception" to the attorney-client privilege.
 
 
 16
 The district court's ruling relied entirely on Washington-Baltimore Newspaper Guild v. Washington Star Co., 543 F.Supp. 906 (D.D.C.1982), a case that predated Siskind, Izzarelli and Hozier. In Washington Star, former employees challenged an allegedly illegal amendment to a benefits plan that diminished the employees' interest in surplus funds, id. at 907, and they sought to submit testimony by the employer's former outside counsel, whose firm had served as the employer's general counsel as well as adviser to the plan at the time that the amendment was adopted. Id. at 907-08. The employer argued that because of the firm's dual role as general counsel and as counsel for the plan, all the attorney's communications with the company were privileged. Id. at 910. The court rejected that argument, holding that "[a]n employer cannot, by retaining the same counsel as that used by the plan, defeat disclosure by a plan's attorney of communications between the plan's trustees and the employer." Id.
 
 
 17
 The sound proposition that may be drawn from Washington Star is that when the same lawyer gives advice to the employer (i) as employer on matters that are non-fiduciary under ERISA, and (ii) as plan fiduciary, the privileged consultation on non-fiduciary matters does not defeat the fiduciary exception that allows beneficiaries to discover the otherwise privileged communications on fiduciary matters. The district court relied on Washington Star for another proposition: that the lawyer's consultation on fiduciary matters expands the fiduciary exception to justify discovery as to all the consultations about the plan, fiduciary and non-fiduciary alike. This second proposition is not a corollary of the first. True, the opinion in Washington Star seems to say as much: "the Star should have secured separate legal counsel had it sought to maintain confidentiality in its communications about the Plan." Id. But the question does not turn on the number of lawyers. An employer's retention of two lawyers (one for fiduciary plan matters, one for non-fiduciary matters) would not frustrate a plan beneficiary's ability to obtain disclosure of attorney-client communications that bear on fiduciary matters. See, e.g., Martin, 140 F.R.D. at 324 (rejecting assertion of attorney-client privilege by a fiduciary that attempted "to protect its own interests by consulting in confidence its own privately hired attorneys" on matters of plan administration). The issue presented on this petition is not one of attorney conflict, which is solved by multiplying the number of lawyers: by authorizing the employer to act as plan fiduciary in the first place, see ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), ERISA has surely absolved the employer of the lesser conflict of using a single lawyer (or its in-house counsel) to advise it in both capacities. Instead, the issue presented here is a discovery question that depends on the existence (or not) of a fiduciary duty that is located in the employer, not the lawyer.
 
 
 18
 In M.A. Everett v. USAir Group, Inc., 165 F.R.D. 1, 4 (D.D.C.1995) (decided by a court within the same district as Washington Star ), the district court recognized that an employer does not act as a fiduciary when it decides to form, amend, or terminate a plan, and concluded therefore that "when an employer seeks legal counsel solely in its role as employer regarding issues other than plan administration, the employer (not the beneficiaries) is the client and may legitimately assert the attorney-client privilege." Everett, 165 F.R.D. at 4. See In re Unisys Corp. Retiree Medical Benefits Erisa Lit., 1994 WL 6883, at * 3 (E.D.Pa.1994) (noting the critical distinction between communications regarding fiduciary matters and those regarding non-fiduciary matters). In Everett, the administrator of the plan failed to show that any of the disputed documents "relate solely to its nonfiduciary activities or to the formation, amendment or termination of the pension plan." Everett, 165 F.R.D. at 4. But in LILCO's case, the magistrate judge specifically found (and no one has questioned) that the disputed documents clearly relate to non-fiduciary matters only. As to those matters, the fiduciary exception does not overcome the attorney-client privilege.
 
 
 19
 Respondents argue that because the documents they seek were created prior to the passage of ERISA, the distinction between fiduciary and non-fiduciary matters recognized in Siskind and other cases is inapplicable--an odd argument, in light of the fact that this lawsuit is expressly and appropriately pleaded under ERISA. Nonetheless, we are persuaded that the same result is reached even under the common law "joint client exception" urged by respondents. Respondents contend that they, along with LILCO, were clients of Mr. Leiman, on the theory that "[w]hen an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries." Washington Star, 543 F.Supp. at 909 (emphasis added); see also Riggs Nat'l Bank, 355 A.2d at 714 ("In effect, the beneficiaries were the clients of [the attorney] as much as the trustees were, and perhaps more so."). That legal fiction has the real consequence that an employer cannot assert the attorney-client privilege to keep the plan's beneficiaries from discovering otherwise privileged communications concerning the administration of an ERISA plan. See Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir.1992).
 
 
 20
 Here again, however, the necessary predicate is lacking. Respondents did not retain LILCO's Mr. Leiman to advise them; rather, they claim status as joint clients solely by virtue of LILCO's fiduciary obligations to them. Any such client status would therefore be limited to matters within the scope of the fiduciary duty, i.e., to matters of plan administration; otherwise, plan beneficiaries could penetrate the attorney-client privilege to discover communications between LILCO and Mr. Leiman concerning any subject, such as easement rights, discrimination suits, or stock offerings. See In re the Regents of the Univ. of California, 101 F.3d 1386, 1389 (Fed.Cir.1996) (noting that "[w]hen the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for purposes of privilege") (emphasis added), cert. denied sub nom. Genentech v. Regents of the Univ. of California, --- U.S. ----, 117 S.Ct. 1484, 137 L.Ed.2d 695 (1997).
 
 
 21
 We therefore hold that neither the fiduciary exception nor the joint client exception defeats LILCO's invocation of the attorney-client privilege with respect to communications with its attorneys on non-fiduciary matters. The magistrate judge found that all communications at issue were patently non-fiduciary, and the respondents have not challenged that finding here or in the district court.
 
 CONCLUSION
 
 22
 The writ of mandamus is issued; the district court's July 25, 1997 Order is vacated. The district court shall enter an order affirming the orders of the magistrate judge denying the respondents' motion to compel production. The stay issued by this Court expires with the issuance of this writ.
 
 
 
 *
 Hon. Nicholas Tsoucalas of the United States Court of International Trade, sitting by designation