**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0915n.06

**Case No. 11-6017**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 17, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ROSE MOSS, et al., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| | ) | |
| UNUM LIFE INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: COLE and DONALD, Circuit Judges; and SARGUS, District Judge.[*]

**SARGUS, District Judge.** Plaintiff Rose Moss ("Mrs. Moss"), individually and as administratrix of the estate of her husband, Gary L. Moss ("Mr. Moss"), appeals the district court's judgment denying relief in this ERISA action for supplemental life insurance benefits against Defendants Unum Life Insurance Company of America ("Unum"), ServiceMaster Company, Inc. ("ServiceMaster"), and The ServiceMaster Health and Welfare Benefit Plan (the "Plan").

Mrs. Moss raises the following issues on appeal: (1) whether the district court erred in granting summary judgment in favor of ServiceMaster on the basis that Mrs. Moss could not pursue a breach of fiduciary duty claim against ServiceMaster under 29 U.S.C. § 1132(a)(3); (2) whether the district court erred in affirming Unum's denial of Mrs. Moss's claim for supplemental life

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

insurance benefits; (3) whether the district court erred in denying Mrs. Moss's motion to compel production of documents withheld from the administrative claim file on the basis of the attorney-client privilege; and (4) whether the district court abused its discretion in granting ServiceMaster's and the Plan's motion for protective order on the basis that Mrs. Moss's discovery sought information concerning a substantive, rather than procedural, challenge, and not considering evidence outside of the administrative record.

For the following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Gary Moss was an employee of ServiceMaster until his termination on August 5, 2008. As part of his employment, Mr. Moss participated in ServiceMaster's life insurance plan, through which Mr. Moss paid monthly premiums to Unum for supplemental life insurance. ServiceMaster paid approximately $14.04 per month for basic life insurance for Mr. Moss in the amount of $110,000. In addition, Mr. Moss paid $117.20 per month for supplemental life insurance in the amount of $293,000.

Suffering from lung cancer, Mr. Moss stopped working at ServiceMaster on January 6, 2008. He was declared disabled and became entitled to receive long-term disability benefits on April 15, 2008. On April 25, 2008, ServiceMaster sent Mr. Moss a statement of benefits, which detailed those benefits that would continue as a result of his long-term disability. This included his supplemental life insurance policy at a monthly premium of $117.20, and stated "[c]overage will continue at the costs listed below for the remainder of the plan year." (R. 24-5, at 1.) Mr. Moss continued to pay

$117.20 each month after he began receiving disability benefits. Combined with his costs for these and other benefits, Mr. Moss regularly paid $450.90 to ServiceMaster each month.

On August 7, 2008, following Mr. Moss's termination, ServiceMaster sent a conversion/portability notice to Mr. Moss regarding conversion of his benefits into personal insurance policies obtained directly through the insurance companies, including Unum. The notice stated as follows:

> This notice provides the necessary plan information you will need if you wish to convert or port your benefit coverage to a personal policy directly with the insurance company. Included is a form that you can submit to your insurance company in order to convert or port your benefits.
>
> Please note: If you choose to continue coverage, you must return this notice with the application and the first premium payment within 31 days of the date your coverage ends. If this letter is not attached, coverage will be denied.

(Conversion/Portability Notice, R. 35-5.) This notice included information regarding Mr. Moss's basic and supplemental life insurance. Mr. Moss acknowledged his right to convert his insurance policies, and that he must do so within thirty-one days, by signing and dating a "Notification of Conversion Privilege" form on August 29, 2008. (Notification of Conversion Privilege, R. 24-18.)

On September 2, 2008, Mr. Moss applied for conversion of his basic life insurance in the amount of $110,000 for himself and $50,000 for his wife. (Application for Conversion of Group Life Insurance to an Individual Life Insurance Policy, R. 33-6.) On September 10, 2008, Unum contacted Mr. Moss via letter to request completion of two separate enrollment forms in order to convert his coverage. (R. 24-13.) The letter stated that a reply must be received by September 26, 2008. The letter also stated:

> Please note, there will be no further communications if we do not receive a response by the requested date. If the requirements are not received within the given grace period; portability will no longer be an option and the check submitted with your initial application will be voided and subsequently destroyed after a certain amount of time. It is important to note that this offer to accept late requirements is not an extension of benefits. Your life insurance coverage under your employer's group policy remains in effect for 31 days after the date of termination or reduction of coverage.

(*Id.*) Mr. Moss passed away on September 24, 2008. Plaintiff Rose Moss is Mr. Moss's widow and life insurance beneficiary.

On October 24, 2008, Unum sent another letter to Mr. Moss indicating that he had not completed the required forms and that his file was closed. (R. 24-14.) On November 10, 2008, Unum agreed to reopen the file and provide life insurance benefits to Mrs. Moss in the amount of $110,000. Unum did not pay any sum of money to Mrs. Moss for supplemental life insurance.

On October 8, 2009, Mrs. Moss's counsel wrote to Unum requesting copies of all insurance policies, plans, and applications. On November 12, 2009, Unum wrote to Mrs. Moss's counsel advising Mrs. Moss that Mr. Moss was not covered by a group policy and the issue of converted coverage was being addressed separately by the Conversion Unit. On December 22, 2009, the Conversion Unit advised Mrs. Moss's counsel that no supplemental coverage had been converted by Mr. Moss. An appeal of this decision was filed on February 10, 2010. Mrs. Moss's claim for supplemental life insurance benefits was again denied by letter dated March 2, 2010.

On November 13, 2009, Mrs. Moss filed suit in state court to recover supplemental life insurance benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001

4

*et seq.* ("ERISA").[1]  Unum removed the case to the United States District Court for the Western District of Kentucky on December 16, 2009.

On July 9, 2010, Defendants ServiceMaster and the Plan filed a motion to dismiss the Amended Complaint, or in the alternative, motion for summary judgment.  Defendants ServiceMaster and the Plan also filed a motion for protective order as to certain discovery requests, or in the alternative, motion for extension of time to respond to discovery.  On the same day, Defendant Unum filed a motion to dismiss Counts II through VII of the Amended Complaint and the ERISA penalty claim.

On September 24, 2010, the district court granted judgment to Mrs. Moss on her claim for ERISA penalties for ServiceMaster's failure as plan administrator to provide plan documents, granted ServiceMaster's motion and entered summary judgment for it on all other claims, granted Unum's motion and entered summary judgment for it on all claims except for a claim of benefits under 29 U.S.C. § 1132(a)(1)(b), and granted the Plan's motion and entered summary judgment for it on all claims except for a claim of benefits under 29 U.S.C. § 1132(a)(1)(b).  (Op., R. 50.)  The district court also granted ServiceMaster's and the Plan's motion for protective order, holding that Mrs. Moss's discovery requests concerned a substantive, rather than procedural, challenge to Unum's decision regarding the denial of benefits.  (Op., R. 51.)

Unum submitted the administrative file in this case on October 20, 2010.  Unum also sent a privilege log to Mrs. Moss, noting that certain portions of the file were withheld on the basis of the

---

[1] It is important to note, particularly for purposes of reviewing the district court's denial of Moss's motion to compel, that this lawsuit was filed before the final benefit decision was made.

attorney-client privilege. On November 29, 2010, Mrs. Moss filed a motion to compel on the basis that the documents were wrongfully withheld from the administrative file, based on the fiduciary exception to the attorney-client privilege. After ordering Unum to produce the withheld documents and conducting an *in camera* review, the district court found that the documents were privileged and that the fiduciary exception did not apply. The district court denied Mrs. Moss's motion to compel on January 18, 2011. (Op., R. 69.)

As to the remaining claim for benefits against Unum and the Plan, the district court reviewed the administrative file and the parties' briefs and on May 18, 2011 issued a Memorandum Opinion and Order affirming Unum's denial of Mrs. Moss's claim for supplemental life insurance benefits and dismissing the case. (Op., R. 82.) Mrs. Moss then filed a motion to alter, amend, vacate, or in the alternative, to remand, asking the district court to reconsider its ruling. The district court denied this motion on August 4, 2011. (Op., R. 90.) Mrs. Moss then filed this appeal.

## II. DISCUSSION

Mrs. Moss raises four issues on appeal: (1) whether the district court erred in granting summary judgment in favor of ServiceMaster on the basis that Mrs. Moss could not pursue a breach of fiduciary duty claim against ServiceMaster under 29 U.S.C. § 1132(a)(3); (2) whether the district court erred in affirming Unum's denial of Mrs. Moss's claim for supplemental life insurance benefits; (3) whether the district court erred in denying Mrs. Moss's motion to compel production of documents withheld from the administrative claim file on the basis of the attorney-client privilege; and (4) whether the district court abused its discretion in granting ServiceMaster's and the Plan's motion for protective order on the basis that Mrs. Moss's discovery sought information concerning

a substantive, rather than procedural, challenge, and not considering evidence outside of the administrative record.

## A. Summary Judgment on Breach of Fiduciary Duty Claim

Mrs. Moss first contends that the district court improperly granted summary judgment in favor of ServiceMaster on the basis that Mrs. Moss could not pursue a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3).

This Court reviews a district court's grant of summary judgment *de novo*. *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 759 (6th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." *Pucci*, 628 F.3d at 759. To survive summary judgment, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted). All evidence and reasonable inferences "must be viewed in the light most favorable to the party opposing the motion." *Id.* at 587 (citation and quotation marks omitted).

"This Court has recognized an equitable claim by a participant against an ERISA plan fiduciary arising out of 29 U.S.C. § 1132(a)(3) when a fiduciary misleads a participant or beneficiary." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 432 (6th Cir. 2006). ERISA defines a "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Thus, in order for Mrs. Moss to succeed on her breach of fiduciary duty claim, she must demonstrate that ServiceMaster exercised "*discretionary* authority over plan management, or *any* authority or control over plan assets." *Briscoe v. Fine*, 444 F.3d 478, 488 (6th Cir. 2006) (emphasis in original).

The district court granted summary judgment in favor of all Defendants on Mrs. Moss's breach of fiduciary duty claim on the basis that Mrs. Moss already had an avenue of relief—a viable claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B)—against Unum. Defendants cited to *Varity Corp. v. Howe*, in which the Supreme Court held that appropriate equitable relief was available under § 1132(a)(3) because the plaintiffs could not recover benefits under any other provision of § 1132. 516 U.S. 489, 515 (1996) ("[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"). This Court interpreted *Varity* to mean that "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity*, 516 U.S. at 512) (finding that because § 1132(a)(1)(B) provided a remedy for plaintiff's alleged injury, plaintiff could not also seek recovery for alleged breach of fiduciary duty under § 1132(a)(3)).

After *Wilkins*, several subsequent Sixth Circuit decisions that addressed § 1132(a)(3) claims suggested that a plaintiff who brought a § 1132(a)(1)(B) claim for denial of benefits was under no circumstance also permitted to bring a § 1132(a)(3) claim. This Court clarified this misunderstanding in *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005). The *Hill* decision held that under some circumstances, an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3). 409 F.3d at 717–18 (explaining that award of individual benefits under § 1132(a)(1)(B) could not provide injunctive relief available under § 1132(a)(3) for alleged injury to plaintiffs caused by breach of fiduciary duties). We further elaborated on this issue in *Gore v. El Paso Energy Corp. Long Term Disability Plan*, in which we held that the plaintiff could bring both a § 1132(a)(1)(B) claim for denial of benefits and a § 1132(a)(3) claim for breach of fiduciary duty because the plaintiff sought recovery of benefits according to the plan terms as they were misrepresented to him by the defendant, rather than according to the actual terms of the plan. 477 F.3d 833, 841–42 (6th Cir. 2007); *see also Julia v. Bridgestone/Firestone, Inc.*, 101 F. App'x 27, 30–33 (6th Cir. 2004) (same).

Mrs. Moss asserts that this case is akin to *Gore*, contending that ServiceMaster provided inadequate notice and misleading information as to what the Mosses needed to do to keep their insurance in effect. The record, however, reflects that ServiceMaster promptly sent Mr. Moss a conversion/portability notice regarding conversion of his benefits two days after his termination. Mr. Moss acknowledged his right to convert his insurance policies by signing and dating a Notification of Conversion Privilege form. Furthermore, Mr. Moss eventually applied for conversion of his basic life insurance policy. Mrs. Moss has not shown that ServiceMaster provided any inaccurate,

9

deceptive, or misleading information, as the employer-defendant did in *Gore*. *See Gore*, 477 F.3d at 841–42.

Mrs. Moss further contends that this case falls under *Hill* and *Gore* because the district court dismissed her breach of fiduciary duty claim even before addressing whether there was adequate relief available from Unum under § 1132(a)(1)(B). Mrs. Moss maintains that if the judgment in favor of Unum is upheld, then no adequate remedy for benefits is available. The deciding factor, however, is not whether a plaintiff has recovered under § 1132(a)(1)(B), but rather, whether a plaintiff may recover. Under *Wilkins*, if § 1132(a)(1)(B) provides the entire remedy for a plaintiff's claims, then the plaintiff cannot also seek relief under § 1132(a)(3). Here, the relief sought under either claim by Mrs. Moss—recovery on a life insurance policy—is the same.

Consequently, Mrs. Moss has no cause of action for breach of fiduciary duty under § 1132(a)(3). We therefore conclude that the district court did not err in granting summary judgment in favor of ServiceMaster on Mrs. Moss's breach of fiduciary duty claim.

## B. Unum's Denial of Mrs. Moss's Claim for Supplemental Life Insurance Benefits

Mrs. Moss also contends that the district court erred in affirming Unum's denial of her claim for supplemental life insurance benefits.

This Court reviews *de novo* a district court's decision granting judgment in an ERISA benefits action based on the administrative record. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). "The general rule is that this Court reviews a plan administrator's denial of ERISA benefits *de novo*." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). However, where, as is the case here, "a plan vests the administrator with complete

10

discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious."[2]  *Id.*  The Court's review is confined to the administrative record as it existed when Unum issued its final decision denying Mrs. Moss's claim for supplemental life insurance benefits.  *Wilkins*, 150 F.3d at 615 (holding that district court and court of appeals are limited to reviewing the administrative record as it existed when the plan administrator made its final decision).  If the administrative record so limited can support a "reasoned explanation" for Unum's decision, the decision is not arbitrary or capricious.  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).

While the arbitrary and capricious standard is "the least demanding form of judicial review of administrative action," *id.*, "it is not a rubber stamp for the administrator's determination."  *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (citing *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).  Under this standard, "we will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'"  *Id.* (citations omitted).

Further, when determining whether a decision was arbitrary and capricious, we also consider

---

[2]The Plan delegates to Unum "discretionary authority to make benefit determinations under the Plan." (Summary of Benefits, R. 24-4, at 27.)  Specifically, the Policy provides: "The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan.  Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities.  Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing provisions of the Plan. All benefits determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim."  (*Id.*)

potential conflicts of interest, including situations where the plan administrator is also the payer of benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). Neither party disputes that Unum both evaluates claims for benefits and pays benefits claims.

However, a conflict of interest is just one factor considered in the Court's determination; it does not change the standard of review. *Glenn*, 554 U.S. at 116–17. *Glenn* instructs that "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.* at 117. A conflict of interest "should prove more important (perhaps of great importance) where circumstances suggest that a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* By contrast, a conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making." *Id.* The record does not show that Unum has a history of biased claims administration or that the conflict otherwise affected the benefits decision. On the other hand, nothing in the record indicates that Unum has taken the kinds of steps to reduce bias and promote accuracy that were identified in *Glenn*. Mrs. Moss, however, has not pointed to any circumstances suggesting that a conflict of interest "affected the benefits decision." *Id.* at 116. Accordingly, we give Unum's conflict neither greater nor lesser weight and simply consider it one factor in determining whether Unum's decision was

arbitrary and capricious.[3]

On appeal, Mrs. Moss maintains that the district court erred in affirming Unum's denial of her claim for supplemental life insurance benefits because: (1) Unum extended the time period for conversion in its letter dated September 10, 2008; and (2) Mr. Moss paid premiums for the month of August 2008, which should have provided coverage until the end of September 2008.

**1. Extension of the Conversion Period**

Mrs. Moss first asserts that Unum, through its letter dated September 10, 2008, extended the conversion period. Unum's letter to Mr. Moss on September 10, 2008, stated:

Dear Mr. Moss:

Thank you for electing to convert your Whole Life Conversion coverage, a feature of your group plan. Before we can confirm your coverage, we will need the following information or requirements:

You are also requesting Conversion coverage for your spouse. This requires you to complete two separate enrollment forms. We have enclosed the appropriate forms to review and return to us.

We know you realize the importance of this valuable protection and would like to provide you with the opportunity to maintain your coverage. **We would like to share some information with you concerning the enrollment period. Due to**

---

[3]**The parties disagree as to the appropriate standard of review. Mrs. Moss believes *de novo* review is appropriate, contending that the Plan's discretionary clause may be disapproved pursuant to an advisory opinion on discretionary clauses issued by the Kentucky Department of Insurance as to life insurance policies sold within the state. (Advisory Op. 2010-01, R. 75-6, at 1. "It is the Department's position that discretionary clauses deceptively affect the risk purported to be assumed in any policy and as such, any forms containing discretionary clauses may be disapproved.") The opinion, however, notes that it is advisory and "not legally binding on either the Department or the reader." (*Id.*) The opinion does not expressly prohibit the use of discretionary clauses, but rather provides guidance as to how such clauses will be reviewed. Regardless, we note that this is not a close case. The standard of review to be applied—whether *de novo* or arbitrary and capricious—does not change the outcome.**

> **contractual requirements regarding the time limits for eligibility, it is important that we receive your reply in our office by September 26, 2008.**
>
> Please note, there will be no further communications if we do not receive a response by the requested date. If the requirements are not received within the given grace period; portability will no longer be an option and the check submitted with your initial application will be voided and subsequently destroyed after a certain amount of time. **It is important to note that this offer to accept late requirements is not an extension of benefits. Your life insurance coverage under your employer's group policy remains in effect for 31 days after the date of termination or reduction of coverage.**
>
> If you have any questions or if we can be of further assistance, please contact a representative at the address shown above. Please address all correspondence to the attention of the Portability/Conversion Unit.

(R. 24-13, at 1–2 (emphasis added).) This letter was sent to Mr. Moss because he had not completed the separate enrollment forms for himself and his wife in order to convert his basic coverage. A denial letter sent to Mrs. Moss's attorney on December 22, 2009 explained this in further detail:

> I have completed the claim review and determined that the supplemental life insurance benefits in the amount of $293,000 are not payable and would like to take this opportunity to explain to you how I arrived at my decision.
>
> Gary Moss terminated employment with ServiceMaster on August 5, 2008. On August 7, 2008, ServiceMaster sent a Health & Welfare Benefit Plan Conversion/Portability Notice to Gary Moss at his home address. This Conversion/Portability notice included both the basic coverage, $110,000, and the supplemental coverage, $293,000, that Mr. Moss was eligible to continue. Mr. Moss was responsible for submitting the application to Unum within the later of 31 days from the date of termination or 15 days from the date of notification.
>
> The application for Whole Life Conversion coverage which Mr. Moss submitted to Unum on September 2, 2008 included both Gary Moss and his spouse, Rose Moss. The application requested $110,000 in basic life coverage for Gary Moss and $50,000 of coverage for Rose Moss. The application was signed by both applicants. Unum requires a separate enrollment form for each insured requesting coverage, as Whole Life Conversion is administered at an individual level.

14

. . .

> On September 10, 2008, we returned the application submitted by Gary Moss to his address on file and requested separate completed applications for the insured and spouse by September 26, 2008. The appropriate forms were enclosed to be signed by each applicant. The letter further advised: "*It is important to note that this offer to accept late requirements is not an extension of benefits.*"

(R. 56-3, at 8–7 (emphasis in original).) Mrs. Moss's contention that the September 10, 2008 letter extended the conversion period ignores the clear language of the September 10, 2008 letter, which is highlighted in the denial letter sent to Mrs. Moss's attorney on December 22, 2009. The language specifically stated that there was no extension of coverage. The language further referenced the thirty-one-day conversion period through which benefits would continue. (R. 24-13, at 1. "Your life insurance coverage under your employer's group policy remains in effect for 31 days after the date of termination or reduction of coverage.") The September 26, 2008 deadline followed an explanation of the enrollment forms to be completed by Mr. Moss and his wife in order to convert his coverage. It did not constitute an extension of the deadline to convert, as Mrs. Moss argues.

Moreover, Mr. and Mrs. Moss affirmatively responded to Unum as to the $110,000 basic life insurance policy on Mr. Moss. This policy has been paid in full by Unum. The only other policy sought to be converted by the Mosses was a $50,000 policy on Mrs. Moss, which is not at issue in this case. The August 7, 2008 conversion/portability notice from ServiceMaster, to which the Mosses responded, referred to both the $110,000 basic life insurance policy and the $293,000 supplemental life insurance policy. Mr. Moss responded only with respect to the $110,000 basic life insurance policy.

The purpose of the letter was to allow Mr. Moss and his wife to complete the proper enrollment forms in order to convert their coverage. It did not extend the thirty-one-day period allowed for them to convert. The deadline to convert remained September 5, 2008. Accordingly, Mrs. Moss's argument that Unum extended the conversion period does not support the claim that Unum's decision was arbitrary and capricious.

## 2. Payment of Premiums

Mrs. Moss also asserts that because Mr. Moss paid a premium in August of 2008, he was entitled to insurance coverage beyond his termination date. Specifically, Mrs. Moss maintains that Mr. Moss should have been covered through the end of August 2008 rather than his termination date of August 5, 2008. If so, Mr. Moss would have died within the thirty-one-day conversion period without converting his policy. Under the policy, if death occurs "within the 31 day conversion application period," Unum is bound to pay "the amount of insurance that could have been converted." (Policy, R. 24-4, at 2.)

The record reflects that Unum acknowledged premiums paid by Mr. Moss from January 6, 2008, through his termination date, August 5, 2008. Mrs. Moss places significant weight on an entry made in Unum's database on October 10, 2008 which states:

> Covered under sickness and injury to 12 month prov in policy as long as premiums continued. The premiums continued from 1/6/2008 to termination date of 8/5/2008
>
> Died 9/24/2008 ??
>
> Premiums paid to 8/5/2008 per claim form.
>
> Premiums paid through 8/1/2008 per merlin (60 day grace period)

16

EE died 9/24/2008.  PREMIUMS ARE ALL SET ON THIS CLAIM.

(R. 24-15, at 1–2.)  Based on this entry, Mrs. Moss contends that Mr. Moss's premiums were paid for in their entirety, entitling him to continued coverage up until his death.[4]  Therefore, Mrs. Moss claims, the sixty-day grace period provided for in the policy applied.

The policy provides a sixty-day grace period if the employer does not pay premiums, as required, in a timely manner to Unum.  (Policy, R. 24-3, at 18–19.)  The policy states that Unum may cancel the policy if "the Employer fails to pay any portion of the premium within the 60 day **grace period**."  (*Id.* at 19 (emphasis in original).)  The policy defines "grace period" as "the period of time following the premium due date during which premium payment may be made."  (*Id.*)

Mrs. Moss maintains that Mr. Moss paid premiums through the end of August of 2008 to ServiceMaster, who was then required to pay such premiums to Unum within the sixty-day grace period.  Mrs. Moss's argument, however, does not recognize the effect that Mr. Moss's termination had on his ability to receive coverage under the group policy.  After Mr. Moss was terminated on August 5, 2008, he had to convert his coverage to an individual policy.  Under the policy, ServiceMaster was no longer required to provide premium payments to Unum for his part of the group policy.

Mrs. Moss further maintains that Mr. Moss was entitled to coverage under the group policy for twelve months after his termination, pursuant to the policy's provisions covering those not

---

[4]Mrs. Moss's interpretation of the entry language is questionable.  Mrs. Moss reads "PREMIUMS ARE ALL SET ON THIS CLAIM" as a statement that Mr. Moss had paid premiums up until his death or through the end of August 2008.  However, Mrs. Moss's reading is inconsistent with the remainder of the entry.  The entry clearly notes that premiums were paid through August 5, 2008—the date of Mr. Moss's termination.

17

working due to injury or sickness. As a result, Mrs. Moss claims that Mr. Moss did not need to convert his coverage for twelve months. Mrs. Moss bases her argument on the following provision contained in the policy:

> ***ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?***
>
> If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered for up to 12 months.

(Policy, R. 24-3, at 24 (emphasis in original).) Mrs. Moss reads this provision as if the word "may" is replaced by the word "will." This argument, however, is inconsistent with the clear and unambiguous language of the Plan and policy. The word "may" should be given its ordinary meaning, which cannot be read as a guarantee of coverage for twelve months. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 956 (6th Cir. 2006) (terms not defined in an insurance policy are given their ordinary meaning). An employee is eligible to participate in the Plan and receive coverage under the policy if they are "regular full-time employees" who work "at least 30 hours a week." (Policy, R. 24-3, at 4.) Mr. Moss fit this category before being declared disabled, meaning he was eligible to participate in the Plan and receive basic and supplemental life insurance. The policy provides that if an employee stops working due to injury or sickness, coverage may continue so long as the employee continues to pay the premium. Mr. Moss was an eligible employee when he was declared disabled, and this exception allowed him to maintain coverage. The two provisions are not ambiguous and do not conflict.

Continuation of coverage, however, is conditional on an employee "not working due to injury or sickness." (Policy, R. 24-3, at 24.) After Mr. Moss was terminated, he was not working due to

his termination, rather than due to injury or sickness. The provision no longer applied after Mr. Moss was terminated. Whether Mr. Moss continued to pay the premiums is immaterial. The language of the Plan unambiguously states that coverage ends upon termination and that conversion must take place within thirty-one days. (Policy, R. 24-4, at 1. "You and your dependents must apply for individual life insurance under this life conversion privilege and pay the first premium within 31 days after . . . your employment terminates.") Thus, despite any payment of premiums intended to continue coverage after Mr. Moss's termination date, his coverage under the group policy ended on August 5, 2008. After that date, he was no longer an eligible employee covered under the group plan. He was required to convert his coverage to an individual policy. Because the payment of premiums beyond Mr. Moss's termination date did not automatically convert his coverage, Mr. Moss was not entitled to coverage beyond his termination date. Nothing in the record indicates that Unum's decision to deny continued coverage under the group policy was arbitrary and capricious.

Based on the foregoing, we conclude that the record supports a reasoned explanation for the plan administrator's decision. *Moon*, 405 F.3d at 379. Applying *Glenn* and considering Unum's conflict of interest as one factor in reviewing the decision, we believe that the other factors are not closely balanced in this case, given the support in the record for the plan administrator's decision. We hold that Unum's decision was not arbitrary and capricious and affirm the district court's judgment in denying Mrs. Moss's claim for relief.

**C. Mrs. Moss's Motion to Compel**

Mrs. Moss also contends that the district court erred in denying her motion to compel production of documents withheld from the administrative claim file on the basis of the attorney-

client privilege.

The question of whether the attorney-client privilege applies is a mixed question of law and fact and is reviewed by this Court *de novo*. *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 712 (6th Cir. 2006); *see also Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (clarifying that *de novo* review applies when discovery issue concerns application of attorney-client privilege). Where, as here, the underlying claim is based on federal law, federal common law determines the extent of the privilege. *See* Fed. R. Evid. 501; *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege is not ironclad, however, and is subject to exceptions. *In re United States*, 590 F.3d 1305, 1310 (Fed. Cir. 2009), *rev'd on other grounds sub nom. United States v. Jicarilla Apache Nation*, — U.S. —, 131 S. Ct. 2313 (2011). One such exception is the fiduciary exception, which requires that when an attorney gives advice to a client acting as a fiduciary for third-party beneficiaries, that attorney owes the beneficiaries a duty of full disclosure. *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997).

Under the fiduciary exception in the context of ERISA, "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'" *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 787 (7th Cir. 2005) (quoting *In re Long Island Lighting Co.*, 129 F.3d at 272). This is because

"[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992) (citing *Washington-Baltimore Newspaper Guild, Local 35 v. Wash. Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982)).

The fiduciary exception generally applies only to communications related to plan administration and not to communications after a final decision or "addressing a challenge to the plan administrator in his or her personal capacity." *Redd v. Bhd. of Maint. of Way Emps. Div. of the Int'l Bhd. of Teamsters*, No. 08-11457, 2009 WL 1543325, at *1 (E.D. Mich. June 2, 2009). The Ninth Circuit has explained:

> Thus, the case authorities mark out two ends of a spectrum. On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries . . ., the attorney-client privilege remains intact.

*United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999). "[H]ard cases should be resolved in favor of the privilege, not in favor of disclosure." *Id.* at 1065.

Although the Sixth Circuit has not addressed the fiduciary exception in the ERISA context, it has recognized the exception in a different context. *See Fausek v. White*, 965 F.2d 126, 133 (6th Cir. 1992) (applying the exception to a dispute between a corporation and its minority shareholders). The district court noted that several district courts in the Sixth Circuit have applied or discussed the fiduciary exception in ERISA cases, and considered it appropriate to determine whether the fiduciary exception to the attorney-client privilege applied in this case. Upon an *in camera* review of the

documents at issue, the district court found that the attorney-client privilege applied to all of the documents and that the fiduciary exception did not apply.

On appeal, Mrs. Moss maintains that she is entitled to the privileged documents under the fiduciary exception. Mrs. Moss makes much of the fact that the documents at issue were created before a final benefits determination was made. However, it is equally important to note that all of the documents sought were generated after initiation of this lawsuit. Moreover, it appears that none of the documents concerned administration of the plan. Rather, as noted in Unum's privilege log, the withheld communications concerned the pending lawsuit. (Unum Privilege Log, R. 56-4.) This is further supported by an affidavit of Unum's in-house counsel, Sandra Livingston. (Livingston Aff., R. 62-2.) Thus, despite the fact that these communications occurred prior to a final benefits decision, the communications relate to a pending lawsuit, do not concern the plan administration, and thus the fiduciary exception does not apply. We therefore conclude that the district court did not err in denying Mrs. Moss's motion to compel.

**D. ServiceMaster's and the Plan's Motion for Protective Order**

Mrs. Moss also contends that the district court abused its discretion in granting ServiceMaster's and the Plan's motion for protective order regarding Mrs. Moss's discovery requests. We review a district court's decision to grant a protective order for abuse of discretion. *Nix v. Sword*, 11 F. App'x 498, 499 (6th Cir. 2001) (per curiam); *Coleman v. Am. Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992) (per curiam).

While parties in a civil action may generally obtain discovery regarding any unprivileged matter that is relevant to the claim or defense of any party, discovery is limited in cases arising under

ERISA. *See Perry v. Simplicity Eng'g*, 900 F. 2d 963, 967 (6th Cir. 1990) ("Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of [the] goal [to resolve disputes inexpensively and expeditiously]."). In reviewing a denial of benefits claim, "the district court [is] confined to the record that was before the Plan Administrator." *Wilkins*, 150 F.3d at 615. The district court should consider outside evidence "only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administration or alleged bias on its part." *Id.* at 619 (Gilman, J., concurring).

Mrs. Moss's discovery sought information relating to ServiceMaster's leave policy and payments Mr. Moss made prior to and following his termination. The district court found that such information could only be offered in support of a substantive challenge to Unum's decision. Mrs. Moss presumably sought information regarding ServiceMaster's leave policy in order to challenge the date of Mr. Moss's termination by demonstrating that he was entitled to accrued vacation and sick days; Mr. Moss's termination date would have then occurred at a later time and the thirty-one-day conversion period would have been extended. With respect to information regarding Mr. Moss's payments, Mrs. Moss presumably sought this information in order to challenge Unum's denial of benefits based on the administrative record before Unum at the time it made its decision. In other words, because Mr. Moss made payments for supplemental life insurance after his termination, his coverage should have been extended. Both of these are substantive challenges to Unum's decision. The district court did not abuse its discretion in considering only the administrative record and granting the protective order.

23

On appeal, Mrs. Moss contends that the discovery she sought was also for the purpose of making a procedural challenge, on the basis that she had been denied due process because she was not permitted to gather all of the pertinent information with regard to her claim. Mrs. Moss, however, only points to ServiceMaster's alleged failure to forward premiums to Unum, which is a substantive challenge that does not relate to Unum's internal process of gathering information regarding Mr. Moss's benefits. Further, regardless of such sought information, the basic, undisputed facts here indicate that: (1) the employment termination date was August 5, 2008; (2) ServiceMaster sent a notice of conversion on August 7, 2008; (3) the notice was received; (4) the time to convert was on or before September 7, 2008; and (5) the $293,000 supplemental life insurance policy was not converted. Consequently, Mrs. Moss has failed to allege any lack of due process afforded by Unum or alleged bias on its part in support of a procedural challenge to Unum's decision. We thus conclude that the district court did not abuse its discretion in granting ServiceMaster's and the Plan's motion for protective order.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.